[No. 6382.]

## Keith v. Atkinson et al.

1. **Custom—Effect—Presumption —** A traveler taking quarters at a hotel is entitled to assume, until notified to the contrary, that the authority of all there employed is that prevailing generally in hotels of the same class, and in a controversy involving the authority of one of such employees, he is entitled to prove the custom.—(483, 484)

2. ——**Particular—**The proprietor of a hotel sought to be charged with the act of his employee is not to be permitted to defend upon proof of his own custom, or the limited authority of the employee, not brought to the notice of the guest, and which is opposed to a general custom.—(483)

Evidence of such limitation of the employee's authority, not brought to the attention of the guest, is not admissible.—(483)

3. **Innkeeper—Liability for Goods of Guest—**A guest delivers his baggage checks to an innkeeper or his servant, e. g., a bellboy. The innkeeper is thereby in constructive possession of the baggage, and liable therefor.—(481)

*Appeal from El Paso District Court*—Hon. W. S. Morris, Judge.

Mr. Frank England for appellant.

Messrs. Harris & Price for appellees.

Mr. Justice Hill delivered the opinion of the court:

It appears that the appellant and his wife came to the hotel of the appellees about 11 p. m. on August 20, 1902, registered and were shown a room, which they occupied that night. The appellant claims that the following morning he rang for a bellboy, and when he came gave him his railroad check for his baggage (a trunk which had been checked from Salt Lake City), and told him to give it to the clerk so as to have the baggage brought up from the depot; that the boy received the check and agreed to deliver it as instructed. The trunk did not come. On inquiry at the office the appellant claims a Mr. Hamilton, the assistant manager, advised him the check had been received there and delivered to a transfer company.

This evidence (as to the receipt of the check at the office) was denied by Hamilton; search was made by both the appellant and the assistant manager, at the hotel, the transfer company's office, the depot and other hotels in the city, to locate the missing trunk. The trunk was never found; the check was never returned to the appellant and this action was brought to recover the value of the trunk and its contents; judgment was in favor of the appellees, from which this appeal is prosecuted.

The ancient rule was that so soon as the goods of the guest were brought within the precincts of the inn, the responsibility of the innkeeper for their safekeeping began. The application of the principles of the common law has been modified from time to time, with changing conditions under which business is transacted and obligations are entered into. In this country the baggage of travelers is transported in cars separate from those in which its owners ride; such owners receive from the carrier checks, a kind of receipt, upon surrender of which the baggage is given to whomsoever so equipped calls for it. In consequence of this, it has become a frequent custom for travelers, upon their arrival at hotels, or the stations in the cities where they are situate, to hand their baggage checks to a representative of some hotel, who assumes the duty and responsibility of having the baggage delivered from the station to the hotel for the guest. It has consequently now been repeatedly held that one who becomes the guest of a hotel, by giving his baggage checks into its possession, places the goods they represent into its custody, so far as to make the innkeeper responsible for goods which, by means of the possession of such checks, his representative or agent receives, although the baggage be never brought within the walls of the hotel.— Thompson on Negligence, Vol. 5, Sec. 6668; *Dickin-*

(31)

*son v. Winchester et al.,* 58 Mass. 114; *Sasseen et al. v. Clark,* 37 Ga. 242; *Coskery v. Nagle,* 83 Ga. 696.

But two other questions are necessary in the determination of this case. First, whether the delivery of the check to the bellboy with instructions to take it to the office was a sufficient delivery to the appellees to make them liable; and, if it was, then it was the duty of the appellees to either surrender the baggage to the plaintiff or return to him his check therefor; having done neither and on account thereof, the plaintiff (although having exercised reasonable diligence to secure the trunk) suffered the loss of it, the defendants would be liable.—*Carhart v. Wainman,* 114 Ga. 632; *Coskery v. Nagle,* 83 Ga. 696; *Williams v. Moore,* 69 Ill. App. 618.

In several instructions complained of, the court, in substance, included the phrase that the check must be delivered to the defendants or to some servant within the scope of whose employment is the getting of baggage and the delivering of it to the guest. In other instructions the court stated that before the plaintiff could recover he must show, etc., that he delivered to the defendants a baggage check calling for the baggage in question, etc., or delivered such baggage check to an employee of the defendants, whose duty it was to receive and deliver baggage to the guest of the hotel. The court further instructed the jury that if they found from the evidence that the plaintiff delivered the check in question to the bellboy, etc., but if they should further find that it was not the duty of such bellboy to secure baggage and deliver the same to the guest at the hotel; then such act on the part of the plaintiff and the bellboy would not be binding upon the defendants unless they should further find that such baggage check was afterwards delivered to the defendants personally, or to some employee or agent of the defendants within the scope of whose em-

ployment it was to obtain baggage and deliver the same to the guest.

During the trial the plaintiff attempted to show by a witness with eighteen years' experience in the hotel business, familiar with the customs concerning the operation and management of hotels, what the custom was concerning the delivery of checks calling for baggage in such cases; also what the duty of bell-boys was, and what the employees of a hotel consist of. He was prevented in part from doing so by objections made and sustained, that the only question involved in this case was what was done at this hotel in relation to this transaction and its customs and regulations, and that such questions were incompetent and immaterial. One of the defendants, over objection, was allowed to testify as to what their custom was and the authority and duty of the bellboys at this particular hotel. In both the instructions given and the rulings on this line of evidence, we think the trial court erred. When the plaintiff became a guest at defendants' hotel he had a right to assume that the authority of its manager, bookkeeper, cashier, porter and bellboys was the same as that prevailing generally in all other hotels of the same class and character, and he had a right to rely upon the prevailing customs, if any such existed, until the contrary was brought to his knowledge.—*Robinson v. United States*, 13 Wall. 36.

The question concerning the bellboy was not whether it was his duty to secure baggage and deliver the same to the guests at the hotel, but whether it was within the apparent scope of his authority or duties to receive from the guest and transport to the office the check for the baggage with the message entrusted to him by the guest concerning the disposition of the check; if it is the custom, after the bellboy has been given the key to your room, and by instructions from

the clerk or by common custom takes your hand-baggage for the purpose of showing the room to you to thereafter be given your check for your baggage for the purpose of having it (the check) taken to the office in order to have your trunk brought from the depot and delivered to your room at the hotel, then it was within the apparent authority of the bellboy to receive the check for the purpose of taking it to the office, and if such was the general custom, then the appellant had a right to rely upon this uniform usage or custom in delivering his check to the bellboy, and the proprietor will be responsible upon account of any loss occasioned thereby. It is true, a usage or custom to be adopted as a rule of law should be certain and general in the branch of a trade or business in regard to which it is set up, so as to authorize the presumption that it is known to those dealing or concerned in that branch of trade or business. And, under the circumstances of this case, if such a system or custom was in general use, and such an undertaking was consistent with what a traveling guest had a right to expect, in accordance with the rules and usage prevailing generally at similar hotels, and no notice was brought to the attention of the guest to the contrary, then he was justified in making such disposition of his check and should have been allowed to show that such a general usage and custom prevailed, and it was error to exclude this testimony, or to give the instructions complained of, or to limit the scope of this inquiry to the hotel of the defendants only.

It is true, that an issue was made as to whether the bellboy ever received the check from the plaintiff at all, and the evidence was conflicting upon this subject; but inasmuch as the verdict of the jury may have been rendered upon the theory that the check, if delivered to the bellboy, was given to a person

who had no right to receive it, instead of upon the theory that the boy never received it, and the evidence and instructions upon the former not being proper, call for a reversal of the cause; for which reasons the judgment is reversed and the cause remanded.                                        *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.