MARIAN A. DAVIDSON, Appellant, Respondent, *v.* THE MADISON CORPORATION, Respondent, Appellant, Impleaded with PETER J. COEN and Another, Defendants.

First Department, January 30, 1931.

*Vincent H. Rothwell* of counsel, for the plaintiff.

*J. Charles Weschler* of counsel [*Walter T. Kohn* with him on the brief; *Weschler & Kohn,* attorneys], for the defendant, The Madison Corporation.

O'MALLEY, J. The action was brought against the Madison Corporation, which owns and operates the Madison Hotel in New York city, and against Myles J. Coen and Peter J. Coen, to recover damages for the loss of a trunk and contents, the property of the plaintiff. The individual defendants were respectively the porter at the Madison Hotel and the licensed truckman regularly employed by the hotel to transfer the baggage of its guests. The action was discontinued as against the defendant Myles J. Coen, the porter, and the judgment is against the hotel and the truckman, Peter J. Coen. The latter does not appeal.

As against the Madison Corporation, hereinafter referred to as the appellant, the judgment is predicated upon the finding of a relationship of guest and innkeeper between the plaintiff and the appellant and the latter's failure to safeguard the property after the trunk came into its possession. Liability of the defendant Peter J. Coen is predicated upon negligence.

The appellant seeks reversal upon various grounds, chief among which is the claim that the plaintiff's property never was in its possession so as to constitute it an insurer at common law. At most, it is urged, there was but a symbolical delivery of the trunk, when the railroad baggage check was given by plaintiff to appellant's porter with the request that the trunk be secured at the railroad station and brought to plaintiff's rooms at the hotel. By such act, it is urged, the plaintiff failed to bring her property *infra hospitium;* and consequently appellant may not be held as an insurer, but for acts of negligence only.

No New York authority precisely in point is called to attention, though cases factually similar in other jurisdictions support plaintiff's claim that in such a case an innkeeper is liable as an insurer. Before further discussion of this or of the other legal questions involved, a statement of the essential facts is required.

The plaintiff is the wife of Walter S. Davidson, who at the time here mentioned was a lieutenant commander in the United States Navy, serving as aide to Vice-Admiral Robertson, commander-in-chief of the Atlantic fleet. She had a summer residence at Newport, R. I., and spent there the season of 1926. Early in September of that year Commander Davidson was under orders to report to the battleship *Texas*, at Philadelphia. On September fifth he reached New York and engaged accommodations for his family at the appellant's hotel, preparatory to placing the three children of the plaintiff in school in New York city. His family consisted of himself, his wife and three children of school age, a governess and plaintiff's personal maid.

Commander Davidson testified that he informed the appellant's manager, Mr. Titze, that he was attached to the navy and had just been ordered to sea duty; that his whereabouts would be indefinite, as the fleet was about to be ordered to the Pacific coast after completing its operations on the Atlantic; that the plaintiff would probably accompany him while the fleet was on the Atlantic coast and that until the final destination of the fleet was determined, the children would probably remain in school at New York; that tentative plans had been made to place them in school in Pasadena, Cal., in the event the fleet was ordered to the west coast; that nothing was said about the length of time that his family would remain at the hotel. He further testified that a price of fifty-five dollars a day was agreed upon.

This evidence is thus outlined for the reason that it forms the basis of plaintiff's claim that she and her family were transients merely and that the relationship between her and the appellant was that of guest and innkeeper, and not that of tenant and landlord. Titze's testimony was to the effect that Commander Davidson engaged rooms for the winter at a flat rate of $1,500 a month.

In our view the evidence fully warranted a finding that the relationship between the parties was that of guest and innkeeper. Plaintiff's claim on this issue finds support in the weekly bills rendered by the appellant. They show a per diem, and not a charge prorated upon a monthly basis at the rate of $1,500 a month. They were concededly made out in the form regularly adopted by all hotels in tendering bills to transient guests.

Appellant had notice when the rooms were engaged that Com-

mander Davidson was an officer of the navy and that the length of his wife's stay and that of his family were subject to future events over which he had no control. In such a case special rules govern the relationship between an innkeeper and an officer in the military forces of the United States. (*Hancock* v. *Rand*, 94 N. Y. 1.) In the case cited it was said (pp. 6, 7): " * * * As an officer in the army his duty might at any time have called him away to some distant and remote place; and individually he had the right to say when he should go without consulting the defendants. Really and actually he was but a transient guest, who had the right to come and to go whenever he pleased. Officers of the army and navy, and soldiers and sailors, who have no permanent residence which they can call home, may well be regarded as travelers or wayfarers when stopping at public inns or hotels, and to make them chargeable as mere boarders it should be shown satisfactorily that an explicit contract had been made which deprived them of the privileges and rights which their vocation conferred upon them as passengers or travelers. General Hancock and the defendants evidently had this in view in the conversation which took place between them in regard to the former's stay at the latter's hotel. The fact that General Hancock was subject to marching orders at any moment, and that this contingency was expressly provided for, makes a wide distinction between the case at bar and one which possesses no such features. This difference and the circumstances connected with it should be sufficient to take this case out of the ordinary rule which applies between an innkeeper and a permanent boarder, and fully sustains the rule we have laid down without disturbing the relationship or obliterating the distinction which exists between a guest and a boarder." '

The plaintiff, after coming from Newport to New York city early in October, joined her husband at Philadelphia and later went with him to Norfolk, Va. She took with her the trunk in question containing, according to her evidence, costly furs and wearing apparel of a value, according to the complaint, in excess of $17,000; and according to the bill of particulars, in excess of $15,000.

In explanation of this seemingly high value and quantity of the contents of the trunk, plaintiff's evidence showed that at the time in question she was acting as the official hostess to the admiral of the Atlantic fleet, and that the contents of the trunk were required in the performance of her duties at various social functions. However this may be, the learned justice, as trier of the facts, has seen fit to place a much lower value on the property lost. The verdict directed was in the sum of $10,000.

Inadequacy and excessiveness are respectively urged by plaintiff and the appellant. Without, however, reviewing the evidence relating to this issue, suffice it to say that we are not inclined to interfere with the finding as to the value. The trial justice who saw and heard the witnesses was in a much better position than are we to appraise the amount of plaintiff's loss.

The contents of the trunk were the same when plaintiff decided to return to New York. The trunk was checked at Norfolk to the Pennsylvania station at New York city on the evening of November twenty-second. It accompanied the plaintiff on a train which left Norfolk in the evening and reached New York city about eight o'clock the following morning.

Plaintiff testified that because she was anxious to see her children before they left home for school, she decided not to wait to bring the trunk with her on the taxi which brought her to the appellant's hotel. To have done so would have required a delay of from twenty minutes to a half hour. She also refused to give the check to the baggage transfer agent at the station for the reason, as she testified, that she feared it might be lost. She had knowledge that the appellant had a baggage transfer service, and accordingly decided to wait until she arrived at the hotel before sending for the trunk.

Concededly the check was turned over to one of appellant's representatives with a request that the trunk be delivered by noon if possible as the plaintiff was in a hurry for it. The check was then given to the defendant Peter J. Coen, who, in turn, gave it to one of his employees with instructions to obtain the trunk and deliver it. This employee, one Gandini, secured the trunk with two others. He was unaccompanied by a helper and when returning to appellant's hotel had occasion to stop at another hotel. In so doing he left his truck wholly unattended and the ignition on his motor unlocked. After an absence of some ten minutes he returned to the street and found his truck had disappeared. It was found the following day at a place some distance from the scene of the theft. The three trunks, including plaintiff's, were missing.

It is conceded that the defendant Peter J. Coen worked regularly for the appellant in the transfer of baggage for the convenience of its guests; also that a regular charge was made by appellant to its guests for such service.

It was the rule at common law that an innkeeper was absolutely liable as an insurer of the property of his guest when brought *infra hospitium*, whether such loss arose by reason of burglary, theft, fire or negligence, unless the loss was occasioned by the

neglect or misconduct of the guest, an act of God or the public enemy.

" His liability extends to wearing apparel, jewelry, money, and even to the horses, wheat, butter and other articles of bulk belonging to the guest, if received by the innkeeper into his care and within his place of entertainment. This is the rule of the common-law, enforced in the days of Lord Coke, and long prior, and ever since, as well in England as in this State." (*Wilkins* v. *Earle*, 44 N. Y. 172, 178.)

The phrase *infra hospitium* appears to mean nothing more or less than that the property of the guest is brought within the precincts of the inn; or if not actually brought within the four walls, the goods come " in the care and under the charge of the innkeeper." (2 Bouvier Law Dict. [Rawle's Rev.] p. 1565.)

It is appellant's claim that modern conditions no longer require so stringent a rule; and that the tendency of modern legislation is to limit, rather than extend, the liability of an innkeeper. Hence, it is urged, that the delivery of the baggage check for the purpose of receiving baggage from a railroad station should be deemed merely a bailment, imposing no further obligations than ordinarily follow from such relationship.

The weight of authority is strongly against appellant's contention. (*Keith* v. *Atkinson*, 48 Colo. 480; *Williams* v. *Moore*, 69 Ill. App. 618; *Carhart* v. *Wainman*, 114 Ga. 632; 40 S. E. 781; *Hagerstrom* v. *Brainard Hotel Corporation*, 45 F. [2d] 130; Beale Law of Innkeepers & Hotels, § 142.) All of these authorities hold that the acceptance by the innkeeper or his representative of the baggage check of a guest makes the former liable as an innkeeper and not merely as a bailee, for the return of the check or the baggage if it has been received upon surrender of the check. Other authorities, though distinguished by appellant's counsel on the facts, are clearly applicable in principle and lead to the same conclusion. (*Dickinson* v. *Winchester*, 58 Mass. 114; *Coskery* v. *Nagle*, 83 Ga. 696; 10 S. E. 491; *Adelphia Hotel Co.* v. *Providence Stock Co.*, 277 Fed. 905; *Huckins Hotel Co.* v. *Clampitt*, 101 Okla. 190; 224 Pac. 945.)

Whatever may be the tendency of modern legislation to restrict, as appellant contends, the common-law liability of an innkeeper, it is indisputable that in the absence of statutory limitation, common-law principles still obtain. The common law is not a fixed and immutable body of principles. As has been said, it " is not rigid and inflexible, a thing dead to all surrounding and changing conditions, it does expand with reason. The common law is not a compendium of mechanical rules written in fixed and indelible

characters, but a living organism which grows and moves in response to the larger and fuller development of the nation." (*Oppenheim* v. *Kridel*, 236 N. Y. 156, 164.)

Therefore, the status and obligations of an innkeeper must be judged in the light of the conditions under which the business is at the time in question being transacted, the conditions under which persons live and the ordinary and customary obligations assumed by an innkeeper and his guest. The business of innkeeping has undergone change and has extended itself to the rendering of many services to guests as a matter of course which in former times were never rendered by an innkeeper as such. These are matters of common knowledge and need not be specifically detailed. Under present conditions the procedure followed by the plaintiff and the appellant is one of common custom. We are of opinion, therefore, that under the circumstances here presented the appellant was liable as an innkeeper for the loss of the plaintiff's baggage.

It is not a sufficient answer for appellant to say that such loss occurred through the negligence of a truckman who was not a regular employee. The duties of an innkeeper are non-delegable. If in their performance he selects third parties, the latter are not to be deemed independent contractors, but must be considered agents of the innkeeper, for whose acts the latter is responsible.

Nor may appellant limit its liability because of sections 201 *et seq.* of the General Business Law. No proof is here presented to show that appellant had complied with the provisions of the law requiring the posting of a printed copy of such sections in a public and conspicuous place and manner in the office and public room and in the public parlors of the hotel, a necessary prerequisite of any limitation of the innkeeper's liability as to the amount of recovery by a guest. (*Millhiser* v. *Beau Site Co.*, 251 N. Y. 290.) Furthermore, here the trier of the facts was well justified upon the evidence presented in finding that the truckman, the appellant's agent, was guilty of negligence.

The court admitted into evidence, over the objection of the plaintiff, the declaration of value of $500 made to the railroad company by the plaintiff's husband, acting as her agent, at the time the baggage was checked with the carrier. Whether such evidence was competent need not be here decided. At best it was nothing more or less than an admission against interest on the part of the plaintiff to be considered in connection with the other evidence respecting value. While it might be binding as between the plaintiff and the carrier, it was not conclusive as between the plaintiff and strangers to the contract of carriage.

In the absence of evidence to show whether the amount of the

verdict directed did or did not include interest, we do not consider the second ground upon which plaintiff's appeal is based.

It follows that the judgment appealed from should be affirmed in all respects, with costs to the plaintiff.

DOWLING, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Judgment affirmed, with costs to the plaintiff.