OKLAHOMA CITY v. CAPLE.

No. 28340.  May 28, 1940.

Rehearing Denied Sept. 10, 1940.

*105 P. 2d 209.*

A. L. Jeffrey, Municipal Counselor, and Leon Shipp, Asst. Municipal Counselor, both of Oklahoma City, for plaintiff in error.

W. P. Morrison, of Oklahoma City, A. L. Morrison, of El Reno, and John Morrison, of Oklahoma City, for defendant in error.

GIBSON, J. Plaintiff in error appeals from a judgment rendered against it in favor of defendant in error for personal injuries sustained by the latter as the result of a cave-in while engaged in the digging of a Civil Works Administration project sewer ditch for the city. The parties are hereinafter referred to as they appeared in the trial court.

Defendant city charges error in the striking from its answer and excluding its offered proof of its defense that plaintiff had accepted compensation from the United States government, and was therefore barred from asserting any claim against the city. There is no error in this ruling.

The United States Compensation Act of September 7, 1916, c. 458, § 26, 39 Stats. 747, U. S. C. A. title 5, sec. 776, provides that:

"If an injury or death for which compensation is payable under this act [chapter] is caused under circumstances creating a legal liability upon some person other than the United States to pay damages therefor, the commission may require the beneficiary to assign to the United States any right of action he may have to enforce such liability of such other person or any right which he may have to share in any money or other property received in satisfaction of such liability of such other person, or the commission may require said beneficiary to prosecute said action in his own name."

It is not shown that plaintiff was required to or had assigned his cause of action to the United States. Without such assignment the United States has no right to bring the action against the defendant nor does it have any property right therein.

The act by providing that the injured employee, from the moneys recovered from a third party as a result of a suit brought by him, must reimburse the United States for compensation previously received, necessarily, by implication, sanctions the bringing of such action by the injured employee, and a recovery by the employee bars an action by the United States. Lassell v. City of Gloversville, 217 N. Y. S. 128, 217 App. Div. 323; Drake v. N. Y. State Electric & Gas Corporation, 294 N. Y. S. 227, 162 Misc. 167; Chiles v. Rohl (S. D.) 201 N. W. 154; Dempster Mill Mfg. Co. v. Wiley (1939 Tex. Civ. App.) 131 S. W. 2d 257. In Dahn v. Davis, 258 U. S. 421, 42 S. Ct. 320, 66 L. Ed. 696 (cited by defendant as Hines v. Dahn, 267 Fed. 105), both remedies available to the injured employee were against the United States, and having sought and obtained compensation from the United States, the employee was thereby precluded from his other remedy for a second satisfaction of the same wrong against the government.

Defendant contends that plaintiff's relief, if any, must be had exclusively under the Workmen's Compensation Act.

The proof shows plaintiff was under the direction and supervision of the C. W. A. He was paid through that agency. The work being done was such a relief project as was contemplated by the Federal Emergency Relief Act of 1933, 48 Stat. 55, 15 N.S.C.A. §§ 721-

728. The C.W.A. undertook these projects with the consent of the public body affected by the project, solely for the relief of unemployment. These projects may, as here, involve hazardous work, but are in no sense industries or activities as contemplated by the Workmen's Compensation Act. The contract of service by plaintiff was had entirely with the C. W. A. The purpose of the C. W. A. was being accomplished by carrying out these projects with workmen employed by it. As respects the defendant, the plaintiff was not the employee of the C. W. A. in the sense contemplated by the Workmen's Compensation Act, and so as to entitle him to its benefits. The provisions of the act cannot be judicially extended and construed as affording something in the nature of insurance benefits for the relief of the unemployed. See Hoover v. Independent School Dist., etc. (Iowa) 264 N. W. 611; Jackson v. North Carolina Emergency Relief Administration (N. C.) 173 S. E. 580; McBurney v. Industrial Accident Commission, etc. (Cal.) 30 P. 2d 414; Basham v. County Court, etc. (W. Va.) 171 S. E. 893; Vaivida v. City of Grand Rapids (Mich.) 249 N. W. 826; State ex rel. State Board, etc., v. Nevada Industrial Commission (Nev.) 34 P. 2d 408.

Defendant further contends that (a) if an injury resulted from the manner of doing the work rather than from the mere performance of it, the owner of the premises (city) cannot be held liable in an action by a servant of an independent contractor; and (b) the owner's duty to a servant extends only to dangers existing on the premises at the time the work started and not to conditions caused by the progress of the work.

Before proceeding to a discussion of these contentions, a more extended description of the situation then existing is necessary.

Plaintiff as a C. W. A. workman was assisting in the digging of a sewer line ditch. At the time of the accident the ditch was about 18 feet deep. Plaintiff at work was standing on a relay platform about six feet below the surface, throwing dirt to the surface. The ditch walls were braced by boards with spaces or gaps of three to five inches between, placed upright, and across these were timbers at top, middle, and bottom. These timbers with boards behind them were held in place against the ditch walls by screw jacks in position across the ditch. The upright boards lacked from two to three feet of extending to the ditch bottom.

Practically parallel with the ditch being dug and from one to three feet distant from the north wall of the ditch, and eight feet beneath the surface, extended an old city sewer line. Fluid from that sewer line softened the north wall and soaked to the ditch bottom level and washed sand there in the wall into the bottom of the ditch. So much of that ditch wall was permitted to find its way into the ditch that the wall at the point where plaintiff was working collapsed, causing the platform upon which plaintiff was working to fall, injuring plaintiff. Plaintiff had been working for nearly three days at that point in the ditch. As to all these matters plaintiff himself testified.

Plaintiff's action is based solely upon the alleged negligence of the city in failing to repair the sewer leak. The record shows that the city exercised no control or supervision over the· C. W. A.'s ditching operations.

This sewer construction project, as other like projects, was not undertaken primarily for the benefit of the city, but for the relief of unemployment, and but incidentally for the convenience of the general public. The federal government assumed the execution of these public works projects in virtue of its obligation to its citizens and its power to further their general welfare. In this situation the relation existing between the federal government and the city was not one of contract in the usual sense of that term. The relation of the federal administrative agency, the C. W. A. here, to that of the city, while not that of an independent contractor in the ordinary sense

of that term, is a relation so analogous to that relation that, as relates to the determination of the respective duties and liabilities created, the relation may be treated as such, with the plaintiff here as a C. W. A. employee. See Brooks v. City of Seattle (Wash.) 74 P. 2d 1008.

In Kaw Boiler Works v. Frymyer, 100 Okla. 81, 227 P. 453, 457, this court declared the employer (the city here) of the independent contractor (C. W. A.) will be liable generally to third persons for injuries resulting from the doing of the work which are the natural and probable consequences of the usual methods of performing such work, but that the employer is not answerable for injuries resulting to third persons in the course of work which is the result of negligence of the contractor (citing cases). That this rule rests upon the principles that the employer had the right to rely on the presumption that the contractor will discharge his legal duties owing to his employees and third persons, and that the procurer of the tort is answerable as the tort-feasor.

Plaintiff, not denying, but disregarding, the duty of the contractor to keep the operations safe, charges that a duty rested upon the city to repair the sewer leak, and that its failure to do so constituted negligence. We are unable to agree with this view.

It was the duty of the city to see that the premises on which the work was to be done were reasonably safe, and to exercise ordinary care to keep the same in safe and suitable condition. At the commencement of the project the sewer line later found to be leaky was eight feet underground and no leak evident. The city furnished premises undeniably originally safe for the ditching operations. The leak was encountered by the contractor only in the course of the work it was in process of performing. This duty to furnish and keep the premises reasonably safe must obviously vary according to the nature of the premises, the circumstances under which they are entered, and as to the dangers that might be encountered, and this duty here extended only as to the condition of the premises at the time the work commenced and not to changes or conditions caused or created by the progress of the ditching operations. Otherwise there would rest upon the city the duty of constant supervision of the contractor's work being done and the manner of doing so. Such a duty of constant supervision did not exist. Hailey v. Missouri, K. & T. R. R. Co. (Tex. Civ. App. 1934) 70 S. W. 2d 249; Southern Mining Co. v. Lawson, 279 Ky. 659, 131 S. W. 2d 831; Dinkuhn v. Western New York Water Co. (1937) 297 N. Y. S. 376, 252 App. Div. 51; City of Tupelo v. Payne (Miss.) 168 So. 283; Armour v. Hahn (1884) 111 U. S. 313, 4 S. Ct. 433, 28 L. Ed. 440; 3 Labatt's Master & Servant (2d Ed.) sec. 1177, p. 3140; United States Cast Iron Pipe & Foundry Co. v. Fuller, 212 Ala. 177, 179, 102 So. 25; Rawson v. Jones-Winifrede Coal Co., 100 W. Va. 263, 130 S. E. 492; 14 R. C. L. 81 (19); 39 C. J. 361 (478), 373 (491); Am. Dig. Master & Servant, Key No. 107 (5).

As the ditching progressed it was the prior duty of the contractor to maintain the operations and place thereof in a reasonably safe condition. 39 C. J. 361. This was the duty of the contractor before the creation and discovery of the sewer leak. This duty continued at all times thereafter. It was the contractor's prior duty to guard against the hazard from the sewer fluid as much as though a flow from a natural spring had been encountered. The contractor attempted to meet that duty by its ditch bracing arrangement as constructed. Its duty extended to adequately and safely do so.

The general rule is that an owner is not liable for the negligence of its independent contractor, except where the work is inherently dangerous or unlawful, or in cases where the principal contractor owes a contractual or a defined legal duty to the injured party in the performance of the work. Missouri, K. & O. Ry. Co. v. Ferguson, 21 Okla. 266, 96 P. 755; Minnetonka Oil Co. v. Haviland, 55 Okla. 43, 155 P. 217, 219;

Texas Pipe Line Co. of Oklahoma v. Willis, 172 Okla. 148, 45 P. 2d 138; Amann v. City of Tacoma (Wash.) 16 P. 2d 601; 14 R. C. L. 86 (23). The construction of the sewer here is not excepted from that general rule.

Under the situation here existing, no duty is shown to have rested upon the city to repair the sewer leak. There was a consequent failure to establish that primary negligence on the part of the city necessary to sustain the judgment. Defendant's motion for a directed verdict should have been sustained.

The judgment is reversed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, OSBORN, and CORN, JJ., concur. HURST, DAVISON, and DANNER, JJ., dissent.

———

DAVISON, J. (dissenting). It is my view that the majority opinion is wrong in holding that there was no primary negligence on the part of the city necessary to sustain the judgment.

Recovery of damages for the injuries sustained was sought on the theory the defendant owed a duty of care to the plaintiff, inasmuch as plaintiff was rightfully on defendant's premises, and that the city breached this duty in permitting a leak from an adjacent sewer line, over which the city had exclusive control, to seep into the ditch in which plaintiff was working, and this seepage being the proximate cause of the latter ditch caving in, thus causing plaintiff's injury.

The majority opinion is based on the general rule that an owner is not liable for the negligence of its independent contractor, except where the work is inherently dangerous or unlawful, or in cases where the principal contractor owes a contractual or a defined legal duty to the injured party in the performance of the work. The majority opinion then cites the following cases in support of this view: Missouri, K. & O. Ry. Co. v. Ferguson, 21 Okla. 266, 96 P. 755; Minnetonka Oil Co. v. Havi-land, 55 Okla. 43, 155 P. 217, 219; Texas Pipe Line Co. of Oklahoma v. Willis, 172 Okla. 148, 45 P. 2d 138; Amann v. City of Tacoma (Wash.) 16 P. 2d 601.

I have no fault to find with the law of the above cases, but I am of the opinion that these cases have no application to the facts in the instant case. These cases deal only with negligence of the independent contractor. In the present case plaintiff is not attempting to hold the city liable for the C.W.A.'s negligence, but asks recovery by reason of the negligence on the part of the city. In the present case I believe the independent contractor and the principal contractor were both guilty of negligence.

This fact that the C.W.A. was also guilty of negligence would not relieve the city from liability under the facts in this case. This view is supported by an abundance of authority, including the cases of Continental Paper Bag Co. et al. v. Bosworth (Tex.) 276 S. W. 170, and Yellow Creek Coal Co. v. Lawson (Ky.) 16 S. W. 2d 1043; Burt Corporation v. Crutchfield, 153 Okla. 2, 6 P. 2d 1055; Walters v. Prairie Oil & Gas Co., 85 Okla. 77, 204 P. 906; 20 R.C.L. art. 89, at pages 102-103.

I am of the opinion that the record discloses that the city had both constructive and actual notice of the leaky defect in the old sanitary sewer. There was ample testimony by the plaintiff and other witnesses to the effect that the old sewer was leaking when the plaintiff started to work (three days before the cave-in and injury) and that the leak was causing water, filth, and sand to seep from the old sanitary ditch into the ditch where plaintiff was working, and that said seepage had an odor. On this point L. M. Bush, the city engineer, testifying for the city, stated that he visited the project the day before the cave-in and that from his examination he would testify that there was no *material* leak in the sewer. Also, Leon Newell, the assistant engineer, testified that he visited the project every day and that there was no

*material* amount of sewage water in the ditch, and that if there had been, he would have been able to smell it. The conclusion that the city engineer knew of the leak was strengthened by evidence to impeach him. This impeaching evidence was derived from an article pertaining to the injury appearing in the Daily Oklahoman the day after the injury, and in part as follows:

"Q. Now, let me ask you this: This paper says on page 2, column 1 in the account of this thing, the following: 'Bush, who directed rescue activities until after nightfall, explained that the area had been troublesome since a lateral sewer line immediately above the new conduit had been leaking into the ditch wall.' Now, has the reporter quoted you correctly there? A. I don't know. Q. He might have? A. He might have quoted me in whole or in part. Q. You might have said that to the reporter? A. I might have, but I am not testifying that I did."

From the facts in the present case, I am of the opinion that the leak from the city sewer line was at least the indirect cause of plaintiff's injury, and that the city, through its proper officials, knew of the leak in this sewer line, and that the failure of the city to properly repair the leak constituted primary negligence on the part of the city.

I am authorized to state that Mr. Justice HURST concurs with the above view.